OPINION
{¶ 1} H.P. ("mother"), appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motion of Franklin County Children Services ("FCCS"), appellee, for permanent court commitment ("PCC") with regard to C.J. P., aka C.J. W.
 {¶ 2} Mother has four children, one of which, C.J. P. ("child"), is the subject of the present matter. The child, a son, was born on August 16, 2004. On January 21, 2006, mother was arrested for felonious assault with a firearm in Hamilton County, Ohio. The *Page 2 
child was transported to FCCS on January 23, 2006, and placed with his maternal grandmother, who resided in Franklin County, Ohio. On January 24, 2006, FCCS filed a complaint, alleging the child was dependent. Due to service issues regarding the child's father, the case was dismissed without prejudice. On April 21, 2006, another complaint was filed alleging the child to be dependent. The complaint contained the same allegations as the original complaint, with the addition that the maternal grandmother had tested positive for drugs. On June 1, 2006, the child was adjudicated dependent and committed to the temporary custody of FCCS. A case plan was adopted. On August 17, 2007, FCCS filed a motion for PCC. A trial was held June 11, 2008. At the time of trial, mother had been incarcerated for 14 months of the period FCCS had had custody of the child, and she was to remain incarcerated until July 2009. On July 7, 2008, the trial court granted FCCS's motion for PCC. Mother appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] The trial court erred by granting permanent custody of the minor child to the appellee when it had failed to comply with R.C. 2151.414.
 [II.] The trial court erred by granting permanent custody of the minor child to the appellee when FCCS made minimal efforts to reunify with this family since the case was filed and managed in the wrong venue.
 {¶ 3} Before addressing mother's assignments of error, we must first address FCCS's contention that the appeal should be dismissed because mother filed the appeal in an untimely manner. Pursuant to App. R. 4(A), "[a] party shall file the notice of appeal required by App. R. 3 within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not *Page 3 
made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure." Civ. R. 58(B) provides: "Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner prescribed by Civ. R. 5(B) and note the service in the appearance docket. Upon serving the notice and notation of the service in the appearance docket, the service is complete. The failure of the clerk to serve notice does not affect the validity of the judgment or the running of the time for appeal except as provided in App. R. 4(A)." Civ. R. 5(B) sets forth the following methods of service:
(B) Service: how made
 Whenever under these rules service is required or permitted to be made upon a party who is represented by an attorney of record in the proceedings, the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or party shall be made by delivering a copy to the person to be served, transmitting it to the office of the person to be served by facsimile transmission, mailing it to the last known address of the person to be served or, if no address is known, leaving it with the clerk of the court. The served copy shall be accompanied by a completed copy of the proof of service required by division (D) of this rule. "Delivering a copy" within this rule means: handing it to the attorney or party; leaving it at the office of the person to be served with a clerk or other person in charge; if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of the person to be served with some person of suitable age and discretion then residing in the dwelling house or usual place of abode. Service by mail is complete upon mailing. Service by facsimile transmission is complete upon transmission.
 {¶ 4} The record herein reveals the clerk served mother's counsel notice only via interoffice mail service on July 7, 2008. Leaving the judgment in the courthouse mailbox of mother's attorney is not a prescribed method of service required by Civ. R. 58(B) and *Page 4 
5(B). Coles v. Lawyers Title Ins. Corp., 163 Ohio App.3d 659,2005-Ohio-5360, ¶ 15, citing Cole v. Motorists Mut. Ins. Co. (Oct. 16, 1995), 5th Dist. No. 1995CA00066. We echo the sentiment of the court inColes that nothing in Civ. R. 5(B) suggests that the clerk carry out the duty of serving notice of a final judgment on a party's counsel by placing a copy of that judgment in a courthouse mailbox, and requiring the clerk of court to properly serve counsel with notice of final judgments is not an onerous obligation. Id. Therefore, we find that the clerk of courts did not properly follow Civ. R. 58(B) in this case and that leaving a copy of a final judgment entry in an attorney's courthouse mailbox is not service pursuant to Civ. R. 5(B). Therefore, the appeal is timely, and the motion to dismiss is denied.
 {¶ 5} We will address mother's assignments of error together, as they are related. With regard to mother's first assignment of error, mother argues that the trial court's decision regarding the best interest factors in R.C. 2151.414(D) was against the manifest weight of the evidence. A trial court's determination in a PCC case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, 10th Dist. No. 03AP-1167, 2004-Ohio-3312. Judgments supported by some competent, credible evidence going to all essential elements of the case are not against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, paragraph one of the syllabus.
 {¶ 6} A decision to award permanent custody requires the trial court to take a two-step approach. First, pursuant to R.C. 2151.414(B)(1), a trial court must find whether any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more *Page 5 
months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 (b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 7} Once the trial court finds that one of the circumstances in R.C. 2151.414(B)(1)(a) through (d) apply, the trial court then must determine whether a grant of permanent custody is in the best interest of the child. R.C. 2151.414(B)(1). FCCS must prove by clear and convincing evidence that an award of permanent custody is in the child's best interest. Id. Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. It is more than a mere preponderance of the evidence, but does not require proof beyond a reasonable doubt. Id.
 {¶ 8} With regard to the first step of the PCC analysis, mother does not contest that the trial court correctly determined that the child had been in the custody of FCCS for 12 months or more of a consecutive 22-month period prior to the hearing. Thus, R.C. 2151.414(B)(1)(d) has been satisfied.
 {¶ 9} However, mother contests the trial court's findings regarding the best interest factors. R.C. 2151.414(D) provides that, in determining the best interest of the *Page 6 
child, the court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem ("GAL"), with due regard for the maturity of the child; (3) the custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child. The factors set forth in R.C. 2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pleaded guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child.
 {¶ 10} With regard to the first factor — the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, out-of-home providers, and any other person who may significantly affect the child — the trial court found that the child was "acquainted" with mother based upon 19 visits between them; he was not acquainted with his siblings; he had no bonds to his relatives, and he was very bonded to his foster caregivers. On this issue, mother testified at trial that, although she was to *Page 7 
participate in visitation with the child, pursuant to the case plan, she was unable since she was in jail from January until June 2006. After being released, she completed approximately 25 visits with the child before she returned to jail in October 2007 for drug trafficking. She also admitted that there was a period when she was not in jail and did not participate in visitation with the child. She admitted she did not participate in the visits because she had a warrant for her arrest, and she did not want to be arrested. However, mother stated she had a good relationship with the child and visitations went well.
 {¶ 11} Nicole Durham, a caseworker for FCCS, testified after mother was released from jail in June 2006, one-hour-per-week visitations with the child were arranged. Mother participated in visitations for several months, but after she missed three in a row, she told Durham that she was not attending because of outstanding warrants. FCCS filed a motion to terminate visits in September 2007 because mother had missed four to five months of visits. Mother attended a total of 19 visits, which Durham said was not substantial compliance with the case plan.
 {¶ 12} Durham further testified that the child was not bonded with mother, and the child has had no contact with mother since March 2007. Durham stated that the child and mother interacted well during visitations, and the child knew mother, called her "mom," and was happy to see her. She never saw the child cry when mother left the visitations. Durham also stated that the child is bonded with his foster parents and siblings, with whom he has lived since April 2006. At the foster home, the child is able to interact freely, shows no signs of fear or withdrawal, is engaged while talking, seeks the comfort of his foster parents, and eats meals with them. *Page 8 
 {¶ 13} Viewing the above testimony, we agree with the trial court that mother has some bonding with the child, given mother had custody of the child for approximately the first 18 months of his life, and did participate in some visitations after FCCS gained custody. However, mother has had no contact with the child for well over half of his life while she has been incarcerated, and, even while she was out of prison, her visitations were limited. The period of incarceration has been extremely detrimental to her bonding with the child and is a result of her own actions. The evidence also demonstrates the child is very bonded to the foster family. This factor, therefore, weighs in favor of granting FCCS's motion for PCC. For these reasons, we cannot find the trial court erred in its analysis under R.C. 2151.414(D)(1).
 {¶ 14} With regard to the second factor — the wishes of the child, as expressed directly by the child or through the child's GAL, with due regard for the maturity of the child — the trial court found that the child's wishes were not expressed because of tender years, as the child was three and one-half years old, but the GAL supported the motion for PCC. Therefore, this factor weighs in favor of granting PCC to FCCS.
 {¶ 15} With regard to the third factor — the custodial history of the child — the trial court found that the child had been in mother's custody from birth to January 23, 2006, and then in the custody of FCCS from January 23, 2006 until the present. As the child has been in the custody of FCCS/the foster family for most of the child's life, this factor weighs in favor of granting PCC.
 {¶ 16} With regard to the fourth factor — the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency — the trial court found that the child needed a *Page 9 
legally secure permanent placement, and such could not be achieved without a grant of permanent custody to FCCS. On this issue, foremost, the evidence demonstrated that appellant had failed to achieve the objectives of the case plan set forth in order to remedy the problems leading to the grant of temporary custody to FCCS. Durham testified the objectives of the reunification case plan were to attend visits, complete random drug screens, complete a drug and alcohol assessment, resolve all criminal charges, follow the recommendations of any psychological evaluation, and complete alcohol and drug treatment. Appellant initially claimed at trial that she achieved the case plan objectives. Mother testified she completed a psychological exam pursuant to the case plan. She stated that it was recommended she undergo drug rehabilitation; however, she admitted that she did not do so. She was also to undergo drug screening, but Durham testified that mother completed only 6 of 19 drug screens, with 3 testing positive and 3 testing negative. Durham indicated this did not constitute substantial compliance with the case plan. Mother stated she did not complete more drug screens because she was addicted to cocaine, and conceded that she did not complete the case plan with regard to the drug screens and drug rehabilitation. However, mother testified that she was in a drug program in jail. Mother stated that for the past five months during her incarceration she has been in the Tapestry program, which is a behavior modification and drug rehab center. However, Durham testified these classes would not qualify as working toward the case plan objectives.
 {¶ 17} As discussed above, mother also testified she was to participate in visitation with the child, but was unable since she was in jail from January until June 2006. She stated she completed approximately 25 visits with the child before she returned to jail in *Page 10 
October 2007 for drug trafficking. She also admitted that there was a period when she was not in jail and did not have visits with the child because she had a warrant for her arrest and she did not want to be arrested. Durham testified mother did not substantially comply with the case plan with regard to visitation.
 {¶ 18} Mother also testified she was on a waiting list for a parenting program and family life skills program. She stated she was eligible to apply for transitional control in a few months and, if she were to receive it, she would be able to visit the child. After her release from prison, a coordinator from the jail would help with aftercare, and she was number 33 on the waiting list for an apartment in Akron. Mother testified that she had made a lot of mistakes over the past two years, and she knows they have been detrimental to the child. She said she wanted the child to be safe, happy, and comfortable, and she did not want to lose him. The Tapestry program made her realize her mistakes. However, mother specifically testified there was "a lot" of her case plan that she did not complete. Durham concluded the child was in need of a legally secure placement and recommended PCC be granted to FCCS.
 {¶ 19} Although mother argues that she substantially complied with the case plan, we find the above testimony demonstrates she failed to comply with the case plan objectives. Mother did undergo a psychological evaluation, but she failed to seek any drug counseling consistent with the recommendation included in the evaluation. Mother also failed to substantially comply with the drug screening, as she only completed 6 of 19 screenings. Further, mother did not fully participate in visitations because she was imprisoned for much of the period under review. *Page 11 
 {¶ 20} However, in mother's second assignment of error, mother contends the fact that she never resided in Franklin County made completing case plan impossible because all of the services offered by FCCS had to be completed in Franklin County. Thus, mother claims FCCS made minimal efforts to reunify her and the child. We disagree. Durham, the caseworker for FCCS, explained that the case was filed in Franklin County because, at the time the case commenced, the child was picked up in Clermont County and then transported to live at his maternal grandmother's home, which was in Columbus. Durham stated that, because mother lived in Clermont County, she placed courtesy requests with that county in an attempt to get services for mother locally. Although those counties were unable to assist mother, they gave Durham a list of phone numbers and referrals for treatment. When Netcare in Franklin County indicated it could not complete a drug and alcohol assessment on mother, because she did not live in the county, Durham referred mother to the Clermont recovery center and Hamilton recovery center, but mother never completed an assessment. Furthermore, FCCS provided gas and Greyhound passes for mother to travel from Clermont County to her visitations in Franklin County. Durham testified she specifically explained the difficulties to mother that she would face receiving services if she chose to live in Clermont County. Therefore, we cannot say that FCCS put forth substandard efforts in trying to reunify mother and the child.
 {¶ 21} It is difficult to discern from the written transcript the level of sincerity and credibility in mother's contention that she has learned lessons while in jail and realized the impact her poor decisions have had on the child. The trial court was in the best position to view her demeanor and was apparently not sufficiently convinced that extending FCCS's *Page 12 
custody of the child until mother is released from prison in July 2009 would necessarily result in mother regaining custody within a reasonable period thereafter. In our view too, extending FCCS's temporary custody of the child on the chance that mother may be able to properly care for the child at some point in the future is too risky a proposition and a gamble that should not be taken when trying to protect the best interest and well being of the child. Therefore, we find the fourth factor weighs in favor of granting PCC to FCCS.
 {¶ 22} With regard to the fifth factor — whether any of the factors in R.C. 2151.414(E)(7) through (11) apply in relation to the parents and child — the factors set forth in R.C. 2151.414(E)(7) through (11) include: (1) whether the parents have been convicted of or pleaded guilty to various crimes; (2) whether medical treatment or food has been withheld from the child; (3) whether the parent has placed the child at a substantial risk of harm due to alcohol or drug abuse; (4) whether the parent has abandoned the child; and (5) whether the parent has had parental rights terminated with respect to a sibling of the child. Here, mother was incarcerated on weapons-and violence-related charges and was an admitted cocaine addict. These factors weigh in favor of granting PCC to FCCS.
 {¶ 23} It is clear from the above analysis that all of the factors weigh in favor of granting PCC to FCCS. Mother's claims to the contrary, the evidence does not support a conclusion that mother is or will be capable of providing the child's health and safety needs. Mother failed to take the necessary actions, pursuant to the case plan objectives to be reunited with her child, both because she served periods of incarceration and because she voluntarily failed to seek and obtain services required for completion of the objectives. As a result of her incarceration, she has little bonding with the child, while the *Page 13 
child has become very bonded with his foster family. Although we understand the gravity of permanently separating a child from his mother, we are without any reliable evidence that the child will be able to obtain his needs from mother once she is released from jail. For these reasons, we find the record supports the trial court's findings that it is in the best interest of the child to grant PCC to FCCS. Therefore, mother's first and second assignments of error are overruled.
 {¶ 24} Accordingly, mother's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
BRYANT and SADLER, JJ., concur. *Page 1